[Cite as *Kienow v. Dir., Dept. of Job & Family Servs.*, 2024-Ohio-2306.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| GLORIA KIENOW, | : | |
| Appellant, | : | CASE NO. CA2024-01-005 |
| | : | O P I N I O N |
| - vs - | | 6/17/2024 |
| | : | |
| DIRECTOR, DEPARTMENT OF JOB AND FAMILY SERVICES, et al., | : | |
| | : | |
| Appellee. | | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2022 03 0441

Tobias, Torchia & Simon, and David Torchia, for appellant.

Dave Yost, Attorney General of Ohio, and Robin A. Jarvis, Senior Assistant Attorney General, for appellee.

**S. POWELL, P.J.**

{¶ 1} Appellant, Gloria Kienow, appeals the decision of the Butler County Court of Common Pleas affirming the decision of the Unemployment Compensation Review Commission disallowing her two applications for unemployment compensation benefits in accordance with R.C. 4141.29(D)(2)(a) upon finding she had quit her job at Atrium Medical Center, Inc. ("Atrium") without just cause. For the reasons outlined below, we affirm the common pleas court's decision.

**Facts and Procedural History**

**{¶ 2}** On May 31, 2016, Kienow started working for Premier Health as a Quality Improvement Supervisor at Miami Valley Hospital located in Dayton, Ohio. The following year, on July 28, 2017, upon her being hired into a new position as a Quality Improvement Spec-RN at Atrium located in Middletown, Ohio, Kienow signed a memorandum of understanding with her employer, Premier Health. That memorandum of understanding initially stated the following:

> Your continuation in this position of Quality Improvement Spec-RN is contingent upon the successful completion of a Bachelor (BSN) or Master's Degree (MSN). We will provide you five (5) years from your original start date of May 31, 2016 to satisfy this requirement. Successful completion is determined by the school. You will be required to provide documentation of your degree to HR and your hiring manager.
>
> ● Five years, May 31, 2021
>
> ● Must have successfully completed your Bachelor (BSN) or Master's Degree (MSN).

**{¶ 3}** That memorandum of understanding also stated:

> This Agreement will be filed in your employee file and the HR file. Your manager will discuss your progress at your scheduled one-on-one meetings. If your degree is not met by the given date, you will have to forfeit the position and it will be posted for other candidates. This requirement is independent of your work performance. In other words, you may be exceeding in your job performance, however, if the degree is not met, you would still have to forfeit the position.

**{¶ 4}** On March 11, 2021, more than two months prior to the May 31, 2021 degree requirement deadline, Kienow sent her supervisor a resignation letter. Within that letter, Kienow advised her supervisor that she was quitting her position at Atrium effective immediately. Kienow did not state any reason for her immediate resignation. However, upon Atrium's request, Kienow agreed to stay on and work for an additional two weeks, thereby resulting in Kienow officially leaving the employ of Atrium on March 24, 2021.

There is no dispute that Kienow had at that time completed just four classes towards obtaining her degree in accordance with the terms of the memorandum of understanding set forth above.

**{¶ 5}** Upon quitting her job at Atrium, and due to certain procedural issues unrelated to this appeal, Kienow filed two applications for unemployment compensation benefits with the commission. Kienow filed these two applications on March 24 and April 26, 2021, respectively. The following year, on January 6, 2022, the commission held a joint hearing on Kienow's two applications. Following this hearing, on January 26, 2022, the commission issued a decision disallowing both applications. In so doing, the commission determined that Kienow had quit her job at Atrium without just cause and was therefore not qualified to receive any unemployment compensation benefits in accordance with to R.C. 4141.29(D)(2)(a).

**{¶ 6}** On March 24, 2022, Kienow filed a notice of appeal from the commission's decision with the common pleas court. Over a year later, on December 11, 2023, the common pleas court issued a decision affirming the commission's decision to disallow Kienow's two unemployment applications in their entirety.

**Kienow's Appeal and Single Assignment of Error Presented for Review**

**{¶ 7}** On January 8, 2024, Kienow filed a timely notice of appeal from the common pleas court's decision. Following briefing from both parties, Kienow's appeal was submitted to this court for consideration on May 8, 2024. Kienow's appeal now properly before this court for decision, Kienow has raised one assignment of error for review. In her single assignment of error, Kienow argues the common pleas court erred by affirming the commission's decision to disallow her two applications for unemployment compensation benefits pursuant to R.C. 4141.29(D)(2)(a). We disagree.

*Standard of Review in Unemployment Compensation Cases*

**{¶ 8}** "The common pleas court and this court utilize the same, limited standard of review in unemployment compensation cases." *Watts v. Community Health Ctrs. of Greater Dayton*, 12th Dist. Warren No. CA2015-07-068, 2015-Ohio-5314, ¶ 12. That is, when reviewing the commission's decision to disallow an application for unemployment compensation benefits both this court and the common pleas court must affirm the commission's decision "unless it is unlawful, unreasonable, or against the manifest weight of the evidence." *Harmon v. Ohio Dept. of Job & Family Servs.*, 12th Dist. Butler No. CA2021-08-105, 2022-Ohio-1142, ¶ 16, citing *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696 (1995). This standard is set forth in R.C. 4141.282(H), which states:

> The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission.

**{¶ 9}** When considering whether the commission's decision was against the manifest weight of the evidence, we are instructed to apply the same manifest weight of the evidence standard that is used in the criminal context. *Marinich v. Lumpkin*, 12th Dist. Warren No. CA2011-11-124, 2012-Ohio-4526, ¶ 20. Applying that standard to the case at bar, we must therefore weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the commission clearly lost its way and created such a manifest miscarriage of justice that its decision must be reversed. *Odom Industries, Inc. v. Shoupe*, 12th Dist. Clermont No. CA2013-09-069, 2014-Ohio-2120, ¶ 11. This court, however, is not permitted to make our own factual findings or determinations regarding the credibility of the witnesses. *Warren Cty. Aud. v. Harpur*, 12th Dist. Warren No. CA2016-01-003, 2016-Ohio-7547, ¶

- 4 -

12. This court is merely tasked with determining whether the commission's decision is supported by the evidence in the record. *Warren Cty. Aud. v. Sexton*, 12th Dist. Warren No. CA2006-10-124, 2007-Ohio-7081, ¶ 25. Accordingly, rather than the common pleas court's decision, this court must instead focus on the commission's decision and the question of whether the commission's decision is supported by the record. *Shepherd Color Co. v. Dir., Ohio Dept. of Job & Family Servs.*, 12th Dist. Butler No. CA2012-11-244, 2013-Ohio-2393, ¶ 19.

*Kienow Quit Her Job at Atrium Without Just Cause*

{¶ 10} The commission in this case disallowed Kienow's two applications for unemployment compensation benefits upon finding she had quit her job at Atrium without just cause, thereby disqualifying her from receiving any unemployment benefits in accordance with R.C. 4141.29(D)(2)(a). Pursuant to that statute, except in certain circumstances inapplicable here, no individual may be paid unemployment benefits where the individual "quit work without just cause or has been discharged for just cause in connection with the individual's work * * *." Thus, given the plain language set forth within R.C. 4141.29(D)(2)(a), "claimants who quit without just cause are ineligible to receive unemployment benefits." *Gbortoe v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 23AP-329, 2023-Ohio-4844, ¶ 12. "The word 'quit,' for purposes of unemployment compensation, connotes a voluntary act of the employee not controlled by the employer." *Watts*, 2015-Ohio-5314 at ¶ 15, citing *Caudill v. Ashland Oil Co.*, 9 Ohio Misc.2d 16, 17 (Clermont C.P.1983).

{¶ 11} What constitutes "just cause" is not statutorily defined. *Western-Southern Life Ins. Co. v. Fridley*, 69 Ohio App.3d 190, 193 (1st Dist.1990). However, although not defined by statute, as noted by the Ohio Supreme Court, the term "just cause" in this context means "that which, to an ordinarily intelligent person, is a justifiable reason for

- 5 -

doing or not doing a particular act." *Warrensville Heights v. Jennings*, 58 Ohio St.3d 206, 207 (1991). "The determination of just cause depends upon the 'unique factual considerations' of a particular case and is therefore primarily an issue for the trier of fact." *Lippert v. Lumpkin*, 12th Dist. Butler No. CA2010-01-004, 2010-Ohio-5809, ¶ 33, quoting *Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17 (1985). Therefore, rather than this court, factual questions remain solely within the commission's province. *Odom Industries*, 2014-Ohio-2120 at ¶ 12.

{¶ 12} Upon review of the record, we find the commission's decision finding Kienow had quit her job at Atrium without just cause is not unlawful, unreasonable, or against the manifest weight of the evidence. The commission's decision is instead fully supported by the record in this case. This includes the commission's decision finding, in pertinent part, the following:

> Even assuming that Claimant would have been discharged on or shortly after May 31, 2021, Claimant could have continued employment in the months leading up to that date and sought alternative employment. In doing so, Claimant could have received reliable ongoing income. Instead, Claimant elected to quit employment resulting in no guaranteed support for themselves.

{¶ 13} This is in addition to the commission's decision finding:

> The evidence does not establish that the Employer's expectations or Claimant's working conditions were unreasonable. While Claimant may have been likely to be discharged several months later, that potential discharge does not establish just cause to quit employment months before that possible discharge. Accordingly, Claimant quit work without just cause.

{¶ 14} We find no error in the commission's decision. *See, e.g., Watts*, 2015-Ohio-5314 at ¶ 21 (affirming commission's decision denying appellant's application for unemployment compensation benefits where appellant's discharge was not as "imminent or inevitable" as she alleged, thereby supporting the commission's decision finding

appellant "quit too soon" and without just cause without first availing herself of the opportunity to meet her employer's expectations or explain to her employer why its expectations were unreasonable); and *Gbortoe*, 2023-Ohio-4844 at ¶ 14 (affirming commission's decision denying appellant's application for unemployment compensation benefits where the record established "that appellant could have continued working for employer but instead chose to quit"). This holds true despite Kienow's reasonable disagreement with the commission's decision and its findings set forth therein.

{¶ 15} This court "may not reverse the commission's decision simply because reasonable minds might reach different conclusions." *Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 11. Rather, as noted above, this court must affirm the commission's decision finding an employee quit work without just cause if "some competent, credible evidence in the record supports it." *Barrett v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 21AP-532, 2022-Ohio-2152, ¶ 21. Therefore, because the commission's decision finding Kienow had quit her job at Atrium without just cause is fully supported by the record in this case, the commission's decision to disallow Kienow's two applications for unemployment compensation benefits is not unlawful, unreasonable, or against the manifest weight of the evidence. To the extent Kienow claims otherwise, such argument lacks merit.

*Atrium Had Just Cause to Discharge Kienow on May 31, 2021 Had She Not Quit*

{¶ 16} In reaching this decision, we note our disagreement with Kienow's argument that this is in actuality an "inevitable discharge" case that requires this court to determine whether Atrium would have had just cause to discharge her on May 31, 2021 had she not quit. But, even assuming that this was such a case, the Ohio Supreme Court has already determined that "[u]nsuitability for a position constitutes fault sufficient to support a just-cause discharge." *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332,

2011-Ohio-2897, ¶ 24. The Ohio Supreme Court has also determined that an employer may properly find an employee unsuitable for the required work, and thus at fault for his or her own termination, when: (1) the employee does not perform the required work; (2) the employer made known its expectations of the employee at the time of hiring; (3) the expectations were reasonable; and (4) the requirements of the job did not change substantially since the date of the original hiring for that particular position. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694 (1995), paragraph four of the syllabus. Given these principles, the Ohio Supreme Court has expressly held that:

> when employment is expressly conditioned upon obtaining or maintaining a license or certification and an employee agrees to the condition and is afforded a reasonable opportunity to obtain or maintain the license or certification, an employee's failure to comply with that condition is just cause for termination for unemployment compensation purposes.

*Williams* at ¶ 27.

{¶ 17} In *Williams*, the Ohio Supreme Court applied the four-part test set forth above when determining whether an employee was suitable for a position that required the employee to pass an exam to obtain a license certifying her as an independent social worker ("LISW"). *Id.*, 2011-Ohio-2897 at ¶ 25. The employer gave the employee 15 months to pass the exam, which the employer later extended due to concerns regarding the employee's health. *Id.* However, when the employee was still unable to pass the exam, the employer discharged the employee for failing to obtain the necessary license within the required 15-month timeframe. *Id.* at ¶ 4. The Ohio Supreme Court determined that the employee's termination was done with just cause, thereby forestalling the employee from receiving unemployment benefits pursuant to R.C. 4141.29(D)(2)(a). *Id.* at ¶ 26. In so holding, the Ohio Supreme Court stated:

> There were no outside economic factors influencing [the employee's] termination. [The employee] had a responsibility

to obtain the license as she had agreed to do when accepting the promotion. Failing to meet that requirement was sufficient to establish fault as it was defined in *Tzangas*.

*Id.* The Ohio Supreme Court found this to be the case even though the employee had "made a bona fide effort" to obtain the necessary license within the designated timeframe set forth by her employer. *Id.* at ¶ 32.

{¶ 18} The facts in *Williams* are analogous to the case at bar. We therefore agree with the common pleas court's decision finding the Ohio Supreme Court's decision in *Williams* to be "directly on point to this fact pattern." This is because, as the common pleas court went on to explain within its decision:

> Appellant was required to obtain a bachelors or masters nursing degree for her position in quality assurance at the hospital. This requirement, like the LISW certification requirement in *Williams*, was directly related to Appellant's position. Appellant had already completed a two-year nursing degree and was an RN. To obtain her four-year BSN, she would have only needed to take two or less years of classes. Despite this, Appellant was given five years to complete her degree after signing the Memorandum of Understanding in 2016. Appellant did not start her degree until 2018 and, after a break in 2019, did not resume classes. Appellant only took four classes towards the completion of her degree requirements after signing the Memorandum of Understanding. It is clear from the Review Commission's transcript, the hearing officer's findings, and the administrative record that it was solely the result of Appellant's actions, or inactions, that she did not complete the requirements of the Memorandum.

{¶ 19} We agree with the common pleas court's analysis set forth above. We also agree with the common pleas court's decision finding:

> The hearing officer found the following: (1) Appellant was required to obtain an appropriate bachelors or masters degree before May 31, 2021, and did not do so; (2) the expectation had been made known to the Appellant when she was hired and signed the Memorandum of Understanding; (3) the expectations of Atrium for the degree requirement and Appellant's working conditions were not unreasonable; and (4) the degree requirements and process for extending the

- 9 -

time period had not changed. Under *Williams*, failure to obtain a required certification or license constitutes unsuitability for that position sufficient for an employer to have just cause for termination. The hearing officer's findings contained rulings on each of the *Tzangas* factors for unsuitability for the position sufficient for just cause termination. These findings were supported by the administrative record. Therefore, [in accordance with *Tzangas*], it was not unlawful, unreasonable, nor against the manifest weight of the evidence for the Review Commission to find that Appellant did not quit with just cause, as a discharge on May 31, 2021 would have been for just cause.

{¶ 20} "Unemployment compensation provides temporary income to workers who lose their jobs through no fault of their own." *Evans v. Dir., Ohio Dept. of Job & Family Servs.*, 5th Dist. Delaware No. 23 CAE 04 0023, 2023-Ohio-4299, ¶ 47. "For example, discharge due to layoff, plant closure or work slowdown." *Id.* "[W]hen employees prove to be unsuitable for their jobs or unable to complete their job requirements, 'fault' may exist for purposes of unemployment compensation without any incidents of misconduct." *Alttrain, Inc. v. Dept. of Job & Family Servs.*, 9th Dist. Summit No. 29244, 2019-Ohio-1430, ¶ 17. That is exactly what occurred here and what the memorandum of understanding signed by Kienow expressly warned would happen if she did not obtain the necessary degree by its May 31, 2021 deadline.

{¶ 21} Therefore, although we disagree with Kienow's argument that this is in actuality an "inevitable discharge" case, even assuming that it was, Kienow's claim that Atrium would not have had just cause to discharge her on May 31, 2021 had she not quit also lacks merit. "[A] company is entitled to increase the educational requirements for employment opportunities." *Williams*, 2011-Ohio-2897 at ¶ 31. Accordingly, regardless of whether this case is reviewed to determine if the record supports a finding Kienow quit her job with Atrium without just cause or whether Atrium would have had just cause to discharge Kienow on May 31, 2021 had she not quit, the outcome is the same. That is

to say, under either scenario, the commission's decision to disallow Kienow's two unemployment applications is not unlawful, unreasonable, or against the manifest weight of the evidence. To the extent Kienow claims otherwise, such argument lacks merit.

**Conclusion**

{¶ 22} For the reasons set forth above, and finding no error in the common pleas court's decision to affirm the decision issued by the commission disallowing Kienow's two applications for unemployment compensation benefits in accordance with R.C. 4141.29(D)(2)(a) upon finding she had quit her job at Atrium without just cause, Kienow's single assignment of error lacks merit and is overruled.

{¶ 23} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.